UNITED STATES OF AMERICA,

        Plaintiff,

    v.

DANTRELL JOHNSON (2)
  a.k.a. Trell Moe
GREGORY HAMILTON (3)
  a.k.a. Lil' Lord
KEON PRUITT (4)
  a.k.a. KenKen

        Defendants.

**GOVERNMENT'S OMNIBUS REPLY TO DEFENDANTS' MOTIONS IN LIMINE**

The United States of America by and through its attorneys, Lisa D. Kirkpatrick, Acting United States Attorney for the District of Minnesota, and Assistant United States Attorneys Thomas Calhoun-Lopez, Albania Concepcion, and Rebecca E. Kline, and David L. Jaffe, Chief of the Violent Crime and Racketeering Section of the Department of Justice, and Trial Attorney Brian W. Lynch, responds as follows to the defendants' motions in limine.

## A.   Defendant Hamilton's Motion for Government Witness Sequestration (ECF No. 1738)

The government does not oppose this motion, insofar as it broadly relates to sequestration of government witnesses. At the pretrial conference, the

1

government plans to request that two testifying law enforcement agents be permitted to remain in the courtroom and at counsel table during the trial.

Under Fed. R. Evid. 615, sequestration of most witnesses is mandatory when requested, but the district court has wide latitude in implementing sequestration orders. *United States v. Collins*, 340 F.3d 672, 680 (8th Cir. 2003). "At a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony." Fed. R. Evid. 615. However, the rule does not authorize exclusion of a party who is a natural person, a person whose presence is shown by a party to be essential to the presentation of the party's cause, or a person authorized by statute to be present. Fed. R. Evid. 615(a, c-d). Government agents fall within these exceptions. *See United States v. Engelmann*, 701 F.3d 874, 877 (8th Cir. 2012) ("the decision whether to allow the government's agent to testify even though the agent sits at the counsel table throughout the trial is left to the trial court's discretion") (quotations omitted).

Accordingly, the government does not oppose the sequestration motion but will request that two of its case agents, Internal Revenue Service – Criminal Investigations Special Agent Matthew Schommer and FBI Task Force Officer (and Minneapolis Police Sergeant) David Ligneel, be exempt and permitted to remain at counsel table.

**B.** **<u>Defendant Hamilton's Motion for Disclosure of Testifying Witnesses (ECF No. 1739)</u>**

The government does not generally oppose this motion and will discuss *intended* witnesses for the next trial day with defense counsel. However, the government opposes an order that would preclude it from calling a witness who was not discussed. Trials are fluid. Sometimes, witnesses do not take as long as expected. Given the size of the government's witness list, unexpected scheduling issues are likely to interrupt an intended order. The government will endeavor to apprise the defense of intended witnesses the day before those witnesses are called, and if it appears the government will need to call additional witnesses so as not to waste trial time, the government will notify the defense as soon as reasonably possible.

**C.** **<u>Defendant Hamilton's Motion to Exclude Undisclosed Expert Testimony (ECF No. 1740)</u>**

The government does not oppose this motion, as it does not intend to elicit expert opinions from witnesses who have not been noticed as experts.

**D.** **<u>Defendant Hamilton's Motion to Strike Third Superseding Indictment (ECF No. 1735)</u>**

The Third Superseding Indictment added paragraph 3(b) to Count One, which reads:

> "The Highs consist of several cliques that associate together and congregate at or around the area of West Broadway Avenue and Lyndale Avenue North in Minneapolis. Highs members identify with their cliques, but commit associate with, commit crimes with, and come to the aid of members from other cliques.

3

(ECF No. 1708 at 4.)

Hamilton argues that the Third Superseding Indictment materially altered the terms of the prior indictments to the prejudice of Hamilton on the eve of trial. (ECF No. 1735 at 2.) Hamilton notes that the prior Indictment "unambiguously charged [him] and others with 'being members and associates of a criminal organization, namely, the Highs.'" (*Id.*) Defendant argues that the entity labeled the "Highs" by the Government was charged with being the enterprise. (*Id.*)

Hamilton cites no authority in support of his contention. Hamilton relies upon *United States v. Cancelliere*, 69 F.3d 1116, 1121 (11th Cir. 1995), to argue that "...the addition of the language in Paragraph 3(b) of the Third Superseding Indictment materially alters the terms of the prior indictment to the prejudice of Mr. Hamilton on the eve of trial." (ECF No. 1735 at 2.) This reliance is misplaced. *Cancelliere* involved jury instructions that "constructively amend" a grand jury indictment. 69 F.3d at 1121. The *Cancelliere* Court held that "a jury instruction that constructively amends a grand jury indictment constitutes per se reversible error because such an instruction violates a defendant's constitutional right to be tried on only those charges presented in a grand jury indictment and creates the possibility that the defendant may have been convicted on grounds not alleged in the

4

indictment. *Id.* (citing *Stirone v. United States*, 361 U.S. 212, 217–18 (1960). The decision in *Cancelliere* has no bearing on the case at bar.

An indictment is adequate "if it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution." *United States v. Palmer*, 917 F.3d 1035, 1039 (8th Cir. 2019) (quoting *United States v. Mann*, 701 F.3d 274, 288 (8th Cir. 2012)). An indictment contains all necessary elements of the crime, and is therefore legally sufficient, when the indictment references the relevant statutes. *Id.* (citing *United States v. Sewell*, 513 F.3d 820, 821 (8th Cir. 2008)). An indictment should not be read in a hyper technical fashion and should be "deemed sufficient unless no reasonable construction can be said to charge the offense." *United States v. O'Hagan*, 139 F.3d 641 (8th Cir. 1998).

Hamilton asserts that "instead of having to prove that Mr. Hamilton was a 'member or associate' of the Highs, the Government merely needs to prove that Mr. Hamilton was a member of a constituent 'clique' of the Highs because all members of a 'clique" of a larger organization are necessarily members of the larger organization of which the 'clique' is a constituent part." (ECF No. 1735 at 3.) However, the Third Superseding Indictment in no way alters the elements of RICO Conspiracy or the Government's burden of proof. Under the

5

Third Superseding Indictment, the government is required to prove the existence of the Highs enterprise. Contrary to Hamilton's claims, the Third Superseding Indictment still unambiguously charges Hamilton and others of being "members and associates" of the Highs. (ECF No. 1708 at 8 ("Beginning in or about 2014, and continuing through on or about the date of the Superseding Indictment…the defendants…being persons employed by and associated with the Highs . . . .".)

Furthermore, the prior indictments contained an abundance of information providing adequate notice to the defendants of the existence of particular cliques that form the Highs enterprise.

For example, paragraph 3(f) to Count One of the Second Superseding Indictment alleges that "Highs members used common hand signs meant to signify a particular Highs sect . . . " (ECF No. 820 at 5.) Paragraph 3(d) of the Second Superseding Indictment alleges that "Highs members used common phrases to identify themselves with the Enterprise. For example, Highs members commonly posted…'Y' referring to YNT, a clique within the Highs." (*Id*.)

Importantly, the Third Superseding Indictment satisfies the notice and fairness requirements by quoting the statutory language of RICO Conspiracy, but also providing substantial information regarding the manner in which the defendant associated with the enterprise. *See Palmer*, 917 F.3d at 1039. The

Third Superseding Indictment provided adequate notice to the defendant of the charge offenses, did not materially alter previous indictments, and in no way prejudiced the defendant. Defendant Hamilton's motion should be denied.

**E.** **Defendant Hamilton's Motion to Strike Surplusage in the Third Superseding Indictment (ECF No. 1741)**

Defendant Hamilton has moved in limine to strike surplusage in the Third Superseding Indictment. The United States opposes this motion in part.

Hamilton first moves to strike overt acts "that the Government does not intend to prove at trial." (ECF No. 1741 at ¶ 2.) The United States agrees with Hamilton on this point. The United States proposes that the Third Superseding Indictment as provided and published to the jury include only Overt Acts 38–41, 47–48, 54–55, 61, 66, 70–72, 77–78, 90–91, 100, 120–21, 150–51, 153, 160–61, 164–66, 175, and 178. A proposed redacted indictment is attached to this filing as Gov't Ex. A.

Hamilton specifically moves to strike Overt Act 48. (ECF No. 1741 at ¶ 3.) The United States opposes this motion. As addressed further in § G of this consolidated response, *infra,* Pruitt's statement is admissible under *Bruton* and all other authority. There is therefore no basis to strike this allegation.

Hamilton also specifically moves to strike Overt Act 76. (ECF No. 1741 at ¶ 4.) The United States does not oppose this motion. Overt Act 76 is not

included in the government's proposed redacted indictment (Gov't Ex. A to this filing).

**F.    Defendant Hamilton's Motion to Preclude References to State Convictions (ECF No. 1736)**

The government does not oppose this motion insofar as it relates to the government's intent to introduce evidence regarding the defendants' state convictions for crimes charged in connection with this case, including the Hennepin County case referenced by Mr. Hamilton, 27-CR-21-15871. In fact, the government moved to preclude any defendant from presenting evidence of or referencing these cases in its own motion in limine. (ECF No. 1757 at 26-28.) However, as noted in the government's motion, the government does believe it should be permitted to use the defendants' prior testimony offered in connection with their guilty pleas to the extent they take the stand to testify and that testimony contradicts their prior in-court admissions. *See* Fed. R. Evid. 613.[1]

**G.    Defendant Hamilton's and Defendant Johnson's Motions to Prohibit Introduction of Co-Conspirator Statements Not Made in Furtherance (ECF Nos. 1737 and 1751)**

Defendant Hamilton moves the Court to prohibit the government from introducing out-of-court statements of co-defendants, for the truth of the

---

[1] The government similarly reserved its right to use these convictions to impeach in the representations cited by Defendant Hamilton. (ECF No. 1340, p. 5.)

matter asserted, and which were not made in furtherance of the alleged conspiracy. (ECF No. 1737 at 1.) Defendant Johnson adopts the objections raised by defendant Hamilton and seeks an order from the Court for the Government to identify any co-conspirator statements that it seeks to admit under Rule 801(d)(2)(E). (ECF No. 1751 at 3.)

Ordinarily, a witness whose testimony is introduced at a joint trial is not considered to be a witness "against" a defendant if the jury is instructed to consider that testimony only against a codefendant. This accords with the almost invariable assumption of the law that jurors follow their instructions, *Francis v. Franklin*, 471 U.S. 307, 325, n.9 (1985).

The Court in *Bruton v. United States*, 391 U.S. 123 (1968), "recognized a narrow exception to" the presumption that juries follow their instructions, holding "that a defendant is deprived of his Sixth Amendment right of confrontation when the facially incriminating confession of a nontestifying codefendant is introduced at their joint trial," even with a proper instruction. In *Bruton*, the codefendant's confession "expressly implicat[ed]" the defendant as his accomplice. *Richardson v. Marsh,* 481 U.S. 200, 208 (1987) (citing *Bruton*, 391 U.S. at 124). Thus, at the time that confession was introduced there was not the slightest doubt that it would prove "powerfully incriminating." *Id.* (quoting *Bruton*, 391 U.S. at 135. In *Richardson,* the confession was not incriminating to a co-defendant on its face, and became so

9

only when linked with evidence introduced later at trial. *Id.* The Court reasoned that evidence requiring linkage differs from evidence incriminating on its face in the practical effects which application of the *Bruton* exception would produce. *Id.* The Court continued that if limited to facially incriminating confessions, *Bruton* can be complied with by redaction. *Id.* at 208-209. The Court concluded that if *Bruton* were extended to confessions incriminating by connection, not only is that not possible, but it is not even possible to predict the admissibility of a confession in advance of trial. *Id.* The Court declined to extend *Bruton* to situations involving inferential incrimination and held that the Confrontation Clause is not violated by the admission of a non-testifying codefendant's confession with a proper limiting instruction. *Id.* at 211.

In *Samia v. United States,* the Supreme Court reiterated that:

"Reviewed together, the Court's precedents distinguish between confessions that directly implicate a defendant and those that do so indirectly. *Richardson* explicitly declined to extend Bruton's "narrow exception" to the presumption that jurors follow their instructions beyond those confessions that occupy the former category. 481 U.S. at 207. *Gray* qualified but confirmed this legal standard, reiterating that the *Bruton* rule applies only to "directly accusatory" incriminating statements, as distinct from those that do "not refer directly to the defendant" and "become incriminating only when linked with evidence introduced later at trial." 523 U.S. 185, 194 (1998).

599 U.S. 635, 652-653 (2023).

Hamilton argues that "statements made by persons to law enforcement during contact on the street, while working as informants, subsequent to arrest, during the booking process after arrest, or in similar contexts, are not statements made in furtherance of the alleged conspiracy . . . " (ECF No. 1737 at 2.) Hamilton lists the following Government exhibits and requested a pretrial determination, pursuant to the standard set forth in *United States v. Bell*, 573 F.2d 1040 (8th Cir. 1978), that the "Exhibits are not admissible as co-conspirator statements."

Hamilton cites Government Exhibit A-67, which is a Minnesota Department of Corrections STG Identification/Intelligence Worksheet, dated March 1, 2023, for co-defendant Keon Pruitt. (ECF No. 1737 at 3.) In the worksheet, Pruitt admitted to being a member of Young N' Thuggin, known more commonly as YNT. Pruitt made the statement to Department of Corrections Officer Michael VandeVord, whom the United States intends to call as a witness at trial. Pruitt's statement is admissible against him as a statement by a party opponent under Fed. R. Evid. 801(d)(2). Nothing in the above-referenced worksheet or in Pruitt's statement refers to or facially incriminations defendant Hamilton or co-defendant Dantrell Johnson. The Confrontation Clause is therefore not violated by their admission with a proper limiting instruction. *Richardson,* 481 U.S. at 211.

11

Similarly, Hamilton moves to exclude Government Exhibit A-68, a recorded phone call made by Defendant Johnson. (ECF No. 1737 at 3.) In the call, Johnson makes a statement about "Black mob," which is a clique of the Highs. The statement would be admissible against Johnson as a statement by party opponent under Fed. R. Evid. 801(d)(2). In the call, Johnson does not mention nor implicate Hamilton or Pruitt. Introduction of this statement with a limiting instruction would not violate the Confrontation Clause. The Confrontation Clause is not violated by their admission with a proper limiting instruction. *Richardson,* 481 U.S. at 211.

Hamilton moves to exclude Government Exhibits A-65 an A-66, hand-written notes that were located in his cell in February and May of 2023. (ECF No. 1737 at 4.) The government intends to authenticate and offer the hand-written notes as statements by a party opponent under Fed. R. Evid. 801(d)(2). Defendant Hamilton does not refer to or implicate co-defendants Pruitt or Johnson. Introduction of this statement with a limiting instruction therefore does not violate the Confrontation Clause. (*Id.*) The Confrontation Clause is not violated by their admission with a proper limiting instruction. *Richardson,* 481 U.S. at 211.

Lastly, Hamilton moves to exclude Government Exhibit H-6, an excerpt from the body camera footage of Minneapolis Police Department Officer Efrem Hamilton. (ECF No. 1737 at 4.) In the statement, Pruitt states that he is

12

"YNT, Freeshotz, Highs."  The statement would be admissible against Pruitt as a statement by party opponent under Fed. R. Evid. 801(d)(2).  Again, Pruitt does not refer to nor implicate defendant Hamilton or co-defendant Johnson. The Confrontation Clause is therefore not violated by their admission with a proper limiting instruction.  *Richardson,* 481 U.S. at 211.

The Government's Fourth Motion—Co-Conspirator Statements contains a comprehensive discussion and overview of the different types of co-conspirator statements the Government intends to introduce at trial.  (ECF No. 1757 at 16-23.)

**H.   Defendant Hamilton's Motion to Restrict Scope of Firearm and Toolmark Testimony (ECF No. 1745)**

Defendant Gregory Hamilton has moved in limine to restrict the scope and conclusions of Forensic Scientist Aaron Zirzow's testimony.  The United States does not generally oppose this motion.

Toolmark analysis is broadly accepted by courts in this District and in the other circuits.  *See, e.g.*, *United States v. Dunn*, No. CR 19-268 (MJD/BRT), 2021 WL 2143054, at *6 (D. Minn. May 26, 2021), *aff'd*, 76 F.4th 1062 (8th Cir. 2023); *United States v. Adams*, No. 15-CR-0106 (PJS/FLN), 2016 WL 424967, at *1 (D. Minn. Feb. 3, 2016); *United States v. Black*, No. CR 14-364 (RHK/FLN), 2015 WL 13660442, at *4–6  (D. Minn. Aug. 21, 2015), *aff'd* [ECF No. 452] (Sept. 14, 2015 D. Minn.) (Kyle, J.); *United States v. Belgarde*, No.

3:21-CR-58, 2023 WL 7019914, at *2 (D.N.D. Oct. 25, 2023) (citing cases from the Seventh Circuit, the Ninth Circuit, and the Second Circuit and noting that "[w]hat all of the cases have in common is that expert testimony on firearm toolmarks is admissible.").

As Hamilton notes, courts have imposed reasonable limitations on toolmark analysis testimony. A witness may *not* testify that:

> (1) he/she is "certain" or "100% sure" that two items match, (2) a match is to "the exclusion of all other firearms in the world," or (3) there is a "practical impossibility" that any other gun could have fired the recovered materials. A firearms expert may only testify that, in his or her expert opinion, the bullet came from the suspect firearm to within a reasonable degree of certainty in the firearms examination field.

*United States v. Dunn*, 2021 WL 2143054, at *6, quoting *United States v. Black*, 2015 WL 13660442, at *5.

Consistent with the limitations reflected in *Dunn* and earlier cases, the United States will only offer testimony that, in Forensic Scientist Zirzow's opinion, toolmarks on discharged cartridge casings at the two scenes came from the same firearm with a reasonable degree of certainty in the firearms examination field. Forensic Scientist Zirzow will not testify that he is "certain" or "sure" that discharged cartridge casings match; not that any match is to the exclusion of all other firearms in the world; nor that there is a practical impossibility that any other gun could have fired the discharged cartridge casings.

To the extent that Hamilton agrees that Forensic Scientist Zirzow may testify that casings at the two scenes came from the same firearm with a reasonable degree of certainty, the United States does not oppose his motion. To the extent that Hamilton objects to this testimony, the United States opposes the motion.

## I.     Defendant Johnson's and Defendant Pruitt's Motions to Exclude Overt Act Evidence (ECF No. 1749 and 1760)

Defendants Johnson and Pruitt separately move the Court for an order excluding evidence of the overt acts listed in the Third Superseding Indictment.  (ECF Nos. 1749, 1760.)  Defendant Johnson claims that exclusion is required under the Supreme Court's ruling in *Salinas v. United States*, 522 U.S. 52 (1997), because "[p]roof of a RICO conspiracy does not require proof of any overt acts," and all charges in the indictment "depend on proof of the RICO conspiracy."   (ECF No. 1749.)   Defendant Pruitt separately claims that exclusion is necessary under Fed. R. Evid. 404(b).  Both are incorrect.

The defendants point to no authority that the inclusion of overt acts in an indictment are improper.  Their reliance on *Salinas* is misplaced.  The *Salinas* decision does not stand for the proposition that the government cannot charge overt acts committed by members of a RICO conspiracy.  The *Salinas* Court merely explained, in passing, that the government is not *required* to do so.  *Id*.  The Third Superseding Indictment's inclusion of overt acts detailing

15

defendants' association and racketeering activity provides additional notice regarding the elements of 18 U.S.C. § 1962(d).

Fed. R. Evid. 404(b) similarly does not justify exclusion of the overt acts. The overt acts section of the indictment does not constitute improper character evidence. Instead, that section demonstrates the multitude of actions – including murder, drug trafficking, and arms dealing – that the defendants engaged in to further the goals of the Highs criminal enterprise. They demonstrate the defendants' association with other members of the enterprise, commission of acts together with other members and associates, and general association with the enterprise. The overt acts section also describes activities beginning on April 24, 2014, through November 15, 2023, which clearly demonstrates the longevity required for an association-in-fact enterprise. Simply put, the Highs criminal enterprise exists beyond that which is necessary merely to commit racketeering activity.

The defendants point to no authority that would justify excising overt acts from the indictment. Their motion should therefore be denied.

## J. <u>Defendant Johnson's Motion to Compel Discovery and for Sanctions (ECF No. 1750)</u>

Defendant Johnson moves the Court for an order compelling the government to 1) "redisclose its Jencks file immediately without redaction; 2) exclude the testimony of Forensic Scientist Amber Folsom, Lt. Adam Lepinski,

and Sgt. Marcus Ottney; 3) exclude a DNA lab report as untimely; 4) "immediately" disclose the entire BCA file for any test upon which the United States intends to rely; and 5) "sanction" the government. (ECF No. 1750.) The United States opposes these motions. Each is discussed separately below.

1. *Johnson's Motion for Unredacted Discovery.*

Johnson first argues that the United States has violated Judge Docherty's Third Amended Pretrial Scheduling Order (ECF No. 666) because it redacted "non-cooperator Jencks material." (ECF No. 1750 at 2.) This argument misunderstands the nature of the government's disclosure. Judge Docherty's order explicitly covered Jencks Act materials. (ECF No. 666 at 8.) The redacted materials that the United States provided were not Jencks Act materials—the United States does not intend to call as a witness any of the individuals whose statements were provided. As the United States attempted to explain to Johnson's counsel, the United States was under no obligation to turn the redacted materials over at all—they did not fall under the auspices of *Brady*, *Giglio*, the Jencks Act, Fed. R. Evid. 16, or any other authority governing discovery. The United States turned them over in an abundance of caution so that the defendants would have all discoverable information available to them. Because the statements included statements from individuals inculpating the defendants whom the United States did not intend to call as witnesses at trial, the United States redacted these individuals'

17

identifying information. The United States has genuine concerns that individuals who have made statements to law enforcement about the Highs (and whom the United States does not intend to call as witnesses) could suffer retaliation for providing information to law enforcement, including threats, assaults, and even murder. Johnson has claimed that these concerns are over-blown—the United States respectfully disagrees. The Highs are a violent criminal enterprise that has engaged in violent retaliation against cooperating witnesses in the past.

Johnson's claim that these materials are *Brady* materials is likewise unavailing. These materials are not exculpatory. They are inculpatory—they discuss the existence of the Highs gang and its criminal activities.

2. *Johnson's Motion to Exclude Testimony*.

Johnson asks that the Court exclude the testimony of Forensic Scientist Folsom, Lt. Lepinski, and Sgt. Ottney based on the government's having "willfully and repeatedly" violated Judge Docherty's order. (ECF No. 1750 at 5.) This claim is baseless.

On February 28, 2025, the government disclosed information about Ms. Folsom, Lt. Lepinski, and Sgt. Ottney. As the government noted in its letter (and in its subsequent motion in limine, ECF No. 1759), the government did not consider this information to fall under the auspices of *Giglio* or its progeny but provided the information in an abundance of caution. A copy of the letter

18

is attached to this filing as Gov't Ex. B.[2]   Johnson now claims, without authority, that these disclosures are "late." (ECF No. 1750 at 4.)  His argument fails for a multitude of reasons.

As noted above, these materials are neither *Giglio* materials nor *Brady* materials.  But even if they were, the information relayed in the government's letter is public.  All three disclosures regard publicly filed court materials that Mr. Johnson can readily access himself.  His suggestion that the government's relaying of this information is "late," is both misplaced and without support.

3.      *Johnson's Motion to Exclude the DNA Lab Report.*

Johnson requests exclusion of a DNA laboratory report dated 10/19/2022 that the government disclosed as supplemental material for a noticed expert. Although the government does not agree that disclosure of this report was "untimely," it does not intend to offer the report or testimony concerning the report.  This request can therefore be denied as moot.

4.      *Johnson's Motion for Disclosure of the BCA Lab File.*

Johnson requests "immediate disclosure of the entire BCA lab file for any test conducted that the government intends to rely on."  These materials have already been disclosed to Johnson and all his co-defendants.  As required by

---

[2] Johnson suggests that the letter was bereft of detail (e.g., that the letter said only that Lt. Lepinski "'was the subject of a Report and Recommendation' without specifying more." (ECF No. 1750 at 3.)  As the letter makes clear, this characterization is inaccurate.

the Order, the government included with these materials, as it did with all discovery, a searchable spreadsheet of its disclosures that included bates numbers. (ECF No. 666, para. 4.) Throughout this case, the government has continuously offered all defendants the opportunity to discuss their individualized spreadsheets, as well as inspect and examine the evidence available in this case upon request at a mutually convenient time. Mr. Johnson did not avail himself of that offer. This request should be denied as moot unless and until Mr. Johnson can articulate with specificity what he believes the government has failed to disclosure after conducting a thorough review of the now over 15 discovery spreadsheets provided in this case.

5. *Johnson's Motion for Sanction.*

Finally, Johnson asks the Court to "sanction the government by dismissing the indictment, or any other remedy the Court determines is just and fair." (ECF No. 1750 at 5.) As delineated above, the United States has not violated orders nor undertaken any other actions meriting sanction. The

parties have continually and in good faith discussed discovery and attempted to work out problems.  Johnson points to no basis for his extraordinary request.

Dated: March 5, 2025

Respectfully Submitted,

LISA D. KIRKPATRICK
Acting United States Attorney

BY:  */s/ Rebecca E. Kline*
THOMAS CALHOUN-LOPEZ
ALBANIA CONCEPCION
REBECCA E. KLINE
Assistant United States Attorneys

BRIAN W. LYNCH
Trial Attorney