# UNITED STATES DISTRICT COURT

for the
District of Minnesota

IN THE MATTER OF THE SEARCH OF: THE PROPERTY DESCRIBED IN ATTACHMENT A.

**SEALED BY ORDER OF THE COURT**

Case No. 23-mj-745 (JTH)

## APPLICATION FOR A SEARCH WARRANT

I, David Ligneel, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

**See Attachment A, incorporated here**

located in the State and District of Minnesota, there is now concealed:

**See Attachment B, incorporated here**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

X evidence of a crime;

X contraband, fruits of crime, or other items illegally possessed;

X property designed for use, intended for use, or used in committing a crime;

___ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| Title 18, United States Code, Section 1962 | RICO Conspiracy |
| Title 21, United States Code, Section 841(a) | Distribution and possession with intent to distribute controlled substances |
| Title 21, United States Code, Section 846 | Conspiracy to distribute and possess with intent to distribute controlled substances |

The application is based on these facts:

**See Affidavit, incorporated here**

X Continued on the attached sheet.

*Applicant's Signature*

David Ligneel, Task Force Officer
Federal Bureau of Investigation

*Printed Name and Title*

SUBSCRIBED and SWORN before me by reliable electronic means (FaceTime and email) pursuant to Fed. R. Crim. P. 41(d)(3)

Date: 10-11-2023

*Judge's Signature*

City and State: St. Paul, MN

The Honorable Jon T. Huseby
United States Magistrate Judge

*Printed Name and T*

GOVERNMENT EXHIBIT
A
22-cr-223 (NEB / DTS)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: THE PROPERTY DESCRIBED IN ATTACHMENT A. | Case No. 23-mj-745 (JTH)<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, David Ligneel, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property – Safe Deposit Box 0000113 located at US Bank Branch 00102, further described in Attachment A (incorporated herein), for evidence, fruits, and instrumentalities related to violations of Title 18, United States Code, Section 1962 (RICO Conspiracy), Title 21, United States Code, Sections 841(a) (distribution and possession with intent to distribute controlled substances), and 846 (conspiracy to distribute and possess with intent to distribute controlled substances) (the "**TARGET OFFENSES**"), as further described in Attachment B (incorporated herein).

2. I am a Sergeant with the City of Minneapolis and have been employed as a Peace Officer for the past 26 years. I am currently assigned to the Minneapolis Police Department's Robbery Unit, as well as a Task Force Officer (TFO) with the Federal Bureau of Investigation's (FBI) Violent Crimes Task Force. My duties and responsibilities include

conducting criminal investigations of individuals and entities for possible violations of Federal laws, particularly those laws found in Title 18 of the United States Code. I am thus an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18 of the United States Code.

3. My current assignment involves the regular investigation of violent criminals, criminal organizations (including street gangs), and possession of firearms by prohibited persons. In the course of my investigations, I have used cooperating informants, pen register/trap and trace devices, wiretaps, and video and audio surveillance. Additionally, I have received training in conducting investigations of Organized Crime and Street Gangs, financial crimes investigations, basic narcotics investigations, how to utilize informants, how to conduct social media investigations, as well as training in how to field-test narcotics, concealment methods used to hide narcotics in vehicles, basic search warrant writing, and Cellular Analysis (GPS & Cell Tower Data) training. I have received this training from several different sources ranging from the National Gang Crime Research Center, U.S. Department of Justice, Midwest Counter Drug Training Center, Minnesota Bureau of Criminal Apprehension, Federal Bureau of Investigation, and the Minneapolis Police Department.

4. The facts in this affidavit come from my personal observations, physical surveillance, my training and experience, and information obtained from other law enforcement agents and witnesses. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a search warrant, I have not included

each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause.

5. Based on my training and experience and the facts set forth in this affidavit, there is probable cause to believe that the property described in Attachment A is believed to contain evidence of the Title 18, United States Code, Section 1962 (RICO Conspiracy), Title 21, United States Code, Sections 841(a) (distribution and possession with intent to distribute controlled substances), and 846 (conspiracy to distribute and possess with intent to distribute controlled substances) **(the "TARGET OFFENSES"),** and those items listed in Attachment B, including contraband, fruits, instrumentalities, and property designed or intended for use and which is and has been used as the means of committing the **TARGET OFFENSES.**

## BACKGROUND

6. Beginning in May of 2022, and continuing through the present day, Special Agents with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), along with Special Agents of the Internal Revenue Service – Criminal Investigation ("IRS-CI"), members of the Hennepin County Sheriff's Office, and I have been investigating a group of North Minneapolis street gang members and associates.

7. I know based on my training and experience, conversations with other law enforcement, and evidence specific to this investigation, that North Minneapolis gangs can be categorized into two main groups: High End gangs (the "Highs") and Low-End gangs (the "Lows"). The Highs consider their "territory" to be north of West Broadway Avenue

in Minneapolis. The Lows consider their "territory" to be south of West Broadway Avenue in Minneapolis.

8. The Highs engage in a variety of criminal activity such as murder, assaults, robberies, drive-by shootings, carjackings, other firearms offenses, and controlled substance offenses. These gangs often have unspoken orders to shoot the "ops" or "opps" (what they refer to as opposing gang members) on sight. Members of these gangs are well known to contribute to violence in Minneapolis.

9. Investigators have been investigating the Highs as an enterprise as defined in Title 18 U.S.C. § 1961(4). Pursuant to 18 U.S.C. § 1961, an "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity" and "racketeering activity" includes but is not limited to: "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance," which is chargeable as a felony under State law.

10. Based on witness statements, intelligence gathering, review of social media accounts that are available to the public, and an on-going investigation into numerous acts of gun violence, fraud, and drug trafficking, as described in further detail below, law enforcement believes the Highs act as an enterprise in the following ways: (1) members of this group share firearms which are made available for use by members of the enterprise, as well as for the common purpose of protection from and retaliation against enemies or rival gang members of the enterprise; (2) members of the enterprise share the proceeds from the various criminal activities of the enterprise (primarily drug trafficking) among

other members; (3) the members maintain a shared supply of controlled substances for the purpose of resale; and (4) the enterprise members also engage in back-and-forth violence against their enemies and rival gang members.

11. The Highs have been feuding with the Lows since the murder of Christopher Little in May 2004. Little was a member of the 1-9 Dipset, a Lows gang. Since this murder, there have been hundreds of shootings and murders between these two entities. The victims of these shootings and murders have been members or associates of the criminal street gangs, as well as innocent adults and children who have had nothing to do with street gangs. These acts of violence have continued over the years and are currently happening in North Minneapolis.

12. Within their "territory," the Highs congregate at specific businesses, predominantly: Winner Gas Station, Merwin Liquors, and Walgreens. The Winner Gas Station is located at 626 West Broadway Avenue in Minneapolis. The gas station has been referred to by gang members as "the Murder Station," the "Murder Shop" or simply the "Murder" due to numerous shootings and murders that have occurred there. Across the street from Winner Gas is Merwin Liquors, which is located at 700 West Broadway Avenue. Both Winner Gas and Merwin Liquors are the site of an open-air drug market frequented and operated by members of the Highs.

13. In 2022, MPD began conducting targeted enforcement at both Winner Gas and Merwin Liquors. Since then, some High members migrated to a Boost Mobile store located at 523 West Broadway and continue to sell narcotics in front of the store. Members

of the Highs continue to sell fentanyl, oxycodone hydrochloride, marijuana and other drugs at the above-referenced locations.

14. The most prominent sects of the Highs are Young n Thuggin' (YNT), Freeshotz/Freeshots, SayLess, Taliban, Emerson Murder Boys ("EMB"), Body Gang, Black Mob, the Irv Boys, and the Tre Tre Crips. Some High members belong to more than one sect. However, High members of different sects are expected to come to the aid of each other. Furthermore, High members belonging to different sects often commit crimes with each other for the benefit of one another. An individual's membership in a particular sect is not exclusive, for example, an individual can be a member of both YNT and Freeshotz. Sometimes members or associates simply identify themselves as with the "Highs."

15. The Highs have common purposes, which include: committing crimes of violence to promote and enhance the reputation of the enterprise and to keep rival gang members in fear of the gang; enriching de-facto leaders, members and associates through fraud, robberies, and trafficking of controlled substances and firearms.

16. Members may gain status within the Highs by proving themselves through the commission of criminal activities beneficial to the gang. For example, a member would gain status in the Highs by being a successful drug dealer or making money through illicit activities in general. Highs members are expected to "hunt" rival gang members, meaning to locate and kill them. This is especially true following an act of violence committed against a Highs member by a rival gang member. This is done to protect both the reputation and physical safety of the Highs and its members. Members also collect and distribute

firearms to protect themselves from attacks and to "hunt" rivals or, as Highs members often refer to rivals, "opps."

17. Highs members and associates engage in activities of which affected interstate and foreign commerce. Highs members and associates obtain fentanyl pills from suppliers in Arizona for distribution in Minneapolis and the surrounding area.

18. The Highs' pattern of racketeering activity includes murder, robbery, and drug trafficking.

## PROBABLE CAUSE

19. **Gregory Brown ("G. BROWN")** has the following prior felony convictions:

| Conviction | Date of Conviction (on or about) | Place of Conviction |
|---|---|---|
| Felony DWI | 08/28/2018 | Hennepin County, MN |
| Aid/Abet Assault 2nd Degree | 04/07/2014 | Hennepin County, MN |
| Delivery of a Controlled Substance-Cocaine | 06/06/2011 | Cass County, ND |

20. I know that **G. BROWN** is a YNT and EMB member of the Highs.[1] **G.BROWN** is a higher-ranking member of the Highs who distributes fentanyl pills. **G. BROWN** and associates travel to Arizona to obtain fentanyl pills from a supplier. **G.**

[1] I base this conclusion and other information contained in the search warrant on cooperator statements, to include grand jury testimony, as well as law enforcement assessments, review of social media evidence, review of cell phone extraction evidence, and other evidence connected to the investigation.

**BROWN** and associates supply Highs members and associates with fentanyl pills for distribution throughout the Minneapolis area. **G. BROWN** worked closely with Highs member Calvin Wright ("C. Wright") to obtain and distribute fentanyl pills throughout the Minneapolis area.[2]

21. Furthermore, **G. BROWN** worked closely with Highs member Avante Nix ("Nix") to distribute and sell fentanyl pills in the Minneapolis area. **G. BROWN** and Nix traveled to Arizona to obtain fentanyl pills. Nix was **G. BROWN's** "front man" who would drop off and distribute fentanyl pills to customers of **G. BROWN**.

22. According to Delta and American Airlines records, **G. BROWN** had the following flights to and/or from Arizona:

| Item | Date | Airline | Flight Number | Origination | Connection City | Destination | Companion |
|---|---|---|---|---|---|---|---|
| 1 | 07/01/21 | Delta Airlines | 678 | Minneapolis | | Phoenix | |
| 2 | 07/05/21 | Delta Airlines | 1256 | Phoenix | | Minneapolis | |
| 3 | 08/19/21 | American Airlines | 1040 | Minneapolis | | Phoenix | |
| 4 | 08/20/21 | American Airlines | 1560 | Phoenix | | Minneapolis | |
| 5 | 09/04/21 | American Airlines | 1756 | Minneapolis | | Phoenix | |
| 6 | 09/07/21 | Delta Airlines | 1385 | Phoenix | | Minneapolis | |
| 7 | 09/17/21 | American Airlines | 4898/655 | Minneapolis | Philadelphia | Phoenix | |
| 8 | 09/20/21 | American Airlines | 1756 | Phoenix | | Minneapolis | |

[2] On April 26, 2022, C. Wright was arrested in possession of 2.1 kilograms of fentanyl pills and over $25,000 in Apple Valley, Minnesota. C. Wright was convicted of Possession with the Intent to Distribute Fentanyl in Minnesota District Court case number 22-CR-87 ADM and is currently serving a 12-year sentence.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 9 | 10/09/21 | Delta Airlines | 1456 | Minneapolis | | Phoenix | |
| 10 | 10/10/21 | Delta Airlines | 1323 | Phoenix | | Minneapolis | |
| 11 | 11/02/21 | Delta Airlines | 2795 | Minneapolis | | Phoenix | |
| 12 | 11/05/21 | Delta Airlines | 145 | Phoenix | | Minneapolis | |
| 13 | 11/28/21 | Delta Airlines | 2795 | Minneapolis | | Phoenix | Nix |
| 14 | 12/01/21 | Delta Airlines | 1456 | Phoenix | | Minneapolis | Nix |
| 15 | 12/22/21 | Delta Airlines | 1408 | Minneapolis | | Phoenix | Nix |
| 16 | 12/24/21 | Delta Airlines | 1393 | Phoenix | | Minneapolis | Nix |
| 17 | 01/26/22 | Delta Airlines | 2252 | Minneapolis | | Phoenix | Nix |
| 18 | 01/28/22 | Delta Airlines | 1393 | Phoenix | | Minneapolis | Nix |
| 19 | 06/11/22 | Delta Airlines | 2454 | Minneapolis | | Phoenix | Nix |
| 20 | 06/13/22 | Delta Airlines | 2145 | Phoenix | | Minneapolis | Nix |
| 21 | 06/18/22 | American Airlines | 1756 | Minneapolis | | Phoenix | |
| 22 | 06/21/22 | Delta Airlines | 2754 | Phoenix | | Minneapolis | |

23. Based on numerous cooperator statements, as well as the investigation overall, I know that **G. BROWN** and Nix travelled to Phoenix, Arizona to obtain fentanyl pills for distribution in the Minneapolis area.

24. In early 2021, **G. BROWN** was the subject of an ongoing weapons investigation by the Minneapolis Police Department ("MPD"). On January 22, 2021, MPD officers conducted a traffic stop of **G. BROWN** while he drove a silver Jeep Compass ("Compass") with no license plates. MPD officers recovered 29 intact and 2 broken fentanyl pills from the Compass.

25. Law enforcement identified a CashApp account belonging to **G. BROWN**. Pursuant to a subpoena, law enforcement obtained the subscriber and transaction history for this account, which covers the period between October 8, 2020 and June 18, 2023. The subscriber information for the CashApp account comes back to Gregory Brown with a date of birth of April 2, 1990. I know this to be **G. BROWN's** date of birth. Based on the investigation, as well as the CashApp returns, I know that the CashApp account belongs to **G. BROWN**.

26. The CashApp returns for **G. BROWN** detail thousands of dollars in payments going back and forth between **G. BROWN** and the following Highs members who are actively involved in fentanyl trafficking: Montez Brown ("M. Brown")[3], Deandre Poe ("POE"), NIX, and Robert Lesure ("LESURE"). Based on the CashApp returns, as well as the investigation in general, I know that **G. BROWN** utilized the account to facilitate drug trafficking. Based on my training and experience, as well as conversations with other law enforcement officers, I know that drug dealers utilize CashApp for drug trafficking purposes.

27. Through various investigative measures, law enforcement learned that on or about September 6, 2022, **G. BROWN** signed a Consumer Safe Deposit Box Contract to rent safe deposit box 0000113 located at US Bank Branch number 00102. The address of US Bank, Branch 00102 is 30 4th St NE, Minneapolis, Minnesota 55413, which is in the

---

[3] M. Brown is charged with RICO Conspiracy, Conspiracy to Distribute a Controlled Substance, and other charges in the District of Minnesota case number 23-160 NEB. On April 4, 2023, M. Brown was arrested in possession of a large quantity of fentanyl pills in Minneapolis.

District of Minnesota. On September 5th, 2023, $123.07 was taken from US Bank business bank account 8106 to renew Safe Deposit Box number 0000113 for another year. US Bank account 8106 was opened by **G. BROWN** on September 3, 2022.

## CONCLUSION

28. Based on my training and experience, as well as the investigation, I know that **G. BROWN** is involved in fentanyl trafficking with other Highs members and associates.

29. Based on my training and experience, as well as conversations with other law enforcement officers, I know that drug dealers utilize safe deposit boxes to hide their assets, such as cash, jewelry, precious metals, controlled substances, and firearms, to avoid detection by law enforcement, or to protect their assets from robbery by rival gang members and/or drug dealers. Based on my training and experience, as well as this investigation, I know that gang members utilize safe deposit boxes to hide gang paraphernalia, such as gang-related clothing, photographs, records, and other items.

30. Therefore, based on the facts set forth above, and based on my training, experience, knowledge and the aforementioned facts of this investigation, there is probable cause to believe that the property described in Attachment A contains evidence of Title 18, United States Code, Section 1962 (RICO Conspiracy), Title 21, United States Code, Sections 841(a) (distribution and possession with intent to distribute controlled substances), and 846 (conspiracy to distribute and possess with intent to distribute controlled substances) **(the "TARGET OFFENSES")**, and those items listed in

Attachment B, including contraband, fruits, instrumentalities, and property designed or intended for use and which is and has been used as the means of committing the **TARGET OFFENSES.**

Respectfully submitted,

David Ligneel
FBI Task Force Officer

SUBSCRIBED and SWORN before me
by reliable electronic means (Facetime and email)
pursuant to Fed. R. Crim. P. 41(d)(3) on
October 11, 2023

THE HONORABLE JON T. HUSEBY
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Property to Be Searched

The property to be searched is Safe Deposit Box 0000113 located at US Bank Branch 00102. The address of US Bank, Branch 00102 is 30 4th St NE, Minneapolis, MN 55413.



## ATTACHMENT B

### Items To Be Seized

Evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Section 1962 (RICO Conspiracy), Title 21, United States Code, Sections 841(a) (distribution and possession with intent to distribute controlled substances), and 846 (conspiracy to distribute and possess with intent to distribute controlled substances) (the "**TARGET OFFENSES**"), including but not limited to:

1. Controlled substances, controlled substance analogues, or listed chemicals;

2. Paraphernalia associated with the manufacture and distribution of controlled substances including but not limited to materials and items used for packaging, processing, diluting, weighing, and distributing controlled substances, such as scales, funnels, sifters, grinders, glass panes and mirrors, razor blades, plastic bags, and heat-sealing devices;

3. Proceeds of drug trafficking activities, such as United States currency, precious metals, financial instruments, and jewelry, and documents and deeds reflecting the purchase or lease of real estate, vehicles, precious metals, jewelry, or other items obtained with the proceeds from drug trafficking activities;

4. Firearms, ammunition, magazines, gun boxes, firearm purchase records or receipts, and other paraphernalia associated with firearms;

5. Drug or money ledgers, drug distribution or customer lists, drug supplier lists, correspondence, notations, logs, receipts, journals, books, records, and other documents noting the price, quantity, and/or times when controlled substances were obtained, transferred, sold, distributed, and/or concealed;

6. Personal telephone books, address books, telephone bills, photographs, letters, cables, telegrams, facsimiles, personal notes, receipts, documents and other items or lists reflecting names, addresses, purchases, telephone numbers, addresses and communications regarding illegal activities among and between members and associates involved in drug trafficking activities;

7. Records of off-site storage locations, including but not limited to safe deposit box keys and records, and records and receipts and rental agreements for storage facilities where evidence of the **TARGET OFFENSES** may also be located;

8. Cellular telephones, Smartphones, text messaging systems, and other communication devices, and all electronic storage areas on the device including stored telephone numbers, recently called numbers list, text messages, digital audio and/or video recordings, pictures, settings, and any other user defined settings and/or data, as well as any records associated with such communications services used to commit drug trafficking offenses;

9. Storage media used to conceal evidence of the **TARGET OFFENSES**, including but not limited to, photographs, videos, drug ledgers, customer contact information, and any other records or documents showing violation of the **TARGET OFFENSES** as described above;

10. Bank account records, loan documents, wire transfer records, money order receipts, postal express mail envelopes, bank statements, safe deposit box keys and records, money containers, financial records and notes showing payment, receipt, concealment, transfer, or movement of money generated from the sale of controlled substances, or financial transactions related to the trafficking of controlled substances; and

11. Records, items, and documents reflecting travel for the purpose of participating in drug trafficking activities, such as passports, airline tickets, bus tickets, vehicle rental receipts,

credit card receipts, taxicab receipts, hotel and restaurant receipts, canceled checks, maps, and records of long-distance calls reflecting travel.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "storage medium" includes any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

## SEARCH WARRANT ADDENDUM

1. In conducting the search authorized by this warrant, the government shall make reasonable efforts to utilize search methodology that avoids searching files, documents or other electronically stored information which is not identified in the warrant.

2. If electronically stored data, information, documents or other records have been identified and seized by the government pursuant to this warrant, the government may retain the electronic storage device (e.g., computer, hard drive, mobile device, smartphone, cell phone). The person from whom the electronic storage device was seized may request that the government provide him or her with electronic copies of the data, information, documents or other records by making a written request to the United States Attorney's Office, identifying with specificity the data, information, documents or other records sought to be copied. The government must respond to all such requests within a reasonable amount of time, and must provide a copy of the electronically stored data, information, documents or other records requested unless the copies requested constitute contraband, instrumentalities, or property subject to forfeiture.

3. Nothing in this warrant shall limit or prevent the government from seizing the electronic storage device as contraband or an instrumentality of a crime or commencing forfeiture proceedings against the electronic storage device and the data contained in the device. Nothing in this warrant shall limit or prevent the owner of the electronic storage device, files, software, hardware, data, information, documents or other records from (a) filing a motion with the Court pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure for the Return of Property, or (b) making a request of the government to return certain specified electronic storage devices, files, software, hardware, data, information, documents or other records.

4. The government shall establish a search methodology governing the review of seized data to ensure that no attorney-client privileged communications will be inadvertently reviewed by the prosecution team. In the event that data seized pursuant to this warrant are identified by the government as possibly containing attorney-client privileged communications, an Assistant United States Attorney, who is not a member of the prosecution team and who is not participating in the search, shall act as a "taint team" to set up an ethical wall between the evidence and the prosecution team that will prevent any privileged material from getting through to the prosecution team.

**Return**

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|
| 23-mj-745 | 10/16/23 10:20a | US Bank file |

Inventory made in the presence of: ATF SA Eisfelder

Inventory of the property taken and name of any person(s) seized:

US currency - $5,000

2 - $100 bills
10 - $50 bills
215 - $20 bills

BL

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: 10/20/23

[signature]
Executing officer's signature

Bryan Lervoog ATF SA
Printed Name and Title

SUBSCRIBED and SWORN before me by reliable electronic means (FaceTime, Zoom and/or email) pursuant to Fed. R. Crim. P. 41(d)(3)

[signature]
United States Magistrate Judge

10/21/23
Date