UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 23-160 (NEB/JFD)

---

UNITED STATES OF AMERICA

Plaintiff,

v.

GREGORY BROWN

Defendant.

DEFENDANT GREGORY BROWN'S POSITION WITH RESPECT TO SENTENCING FACTORS

---

Defendant Gregory Brown, by and through his counsel, takes the following position with respect to sentencing and the factors to be considered in light of his favorable verdict, which the Government, via Mr. Brian Lynch, Esq's version of this document, seeks to make disappear, simply by fiat.... Mr. Brown approaches a time-served result, or will in due course, if this Court adopts the recommendations in the PSR, and with respect to the arguments below.

1. We agree with the offense level of Nineteen (19), and the criminal history category of VI, PSR Paras. 97, and the Guidelines-determined fair range of 63 to 78 months, with comparative defendants receiving sentences of imprisonment with an average length of Fifty-Eight (58) months, and a median length of imprisonment imposed at Fifty-Seven (57) months. PSR, Para. 99. When he appears for sentencing on May 18, 2026, Mr. Brown will have already spent nearly thirty-one months in custody on this matter (notwithstanding the initial confusion relating to the sentence he completed in Hennepin County upon his initial arrest and detention, about which more *infra*). Mr. Brown has spent that time at the Sherburne County Adult Detention Center. Full credit is due, for no **accurate** nor **appropriate** detainer existed, as clarified by Judge Shereen Askalani's order, which has been supplied to the parties and US Probation.

If qualified for the RDAP program, in truth, Mr. Brown might have as much as twelve (12) months of this sentence removed, or altered to a term of supervised release. Halfway House placement, of as much as six (6) months, may yet be available to Mr. Brown.

Please do note, the circumstances at the Sherburne County facility have presented issues for Mr. Brown on a staggering scale, far more onerous than a typical stint in a federal facility operated by the Bureau of Prisons. In addition to the radical misconduct by his original counsel—and the threats to Mr. Brown's life that were both constant and consequential from the moment the disastrous motion to suppress evidence and to modify custody was filed **and delivered to his co-defendants**—he has faced major challenges, and mental stress on an unthinkable level, from some of those co-defendants, cooperating and not, as well as other inmates. These threats arose from the supposition that Mr. Brown was himself a co-operator—without a single statement to this effect ever being **scheduled**, let alone actually completed. His mental and physical pain was constant, and avoidable. Indeed, unrelated to that catastrophe from his initial counsel, as this Court will acknowledge, sibling judges from this District have suggested time at the Sherburne County facility should be subject to doubling, in calculating time credit.

3. Regarding the Government's Objections and its utterly tone-deaf Sentencing Position paper, Probation has thoroughly overruled each item raised to date. In essence, Mr. Lynch, on behalf of the Department of Justice, suggests that the trial was irrelevant, a mere waste of a few weeks of a lovely Minneapolis summer. He demands this Court ignore the verdict entire, and sentence Mr. Brown for both acquitted, uncharged and even **imagined** conduct, seeking—true statement!—a **life sentence** for our man. Preposterous.

4. Such a sentence—life—would be unmatched in recent history, were this Court to so act. Appellate review of the verdict would be immediate, reducing the Government's position to folly. On June 5, 2025, the jury acquitted Mr. Brown of Count 3 (Conspiracy to Distribute in Excess of 400 Grams of Fentanyl), but convicted him of the least onerous terms of Count 1/RICO. At that pronouncement, Mr. Brown's exposure to a life sentence, to **any** mandatory minimum sentence, disappeared.

The jury's "No" responses, on the verdict form they returned for Mr. Brown and at least two other co-defendants, reverberates brilliantly, **loudly**, except for and to the Government. There is no alternative but to reject all sentencing considerations past those included in Mr. Fett's and Ms. Heino's resultant PSR—and this Court should endorse those, without limitation. At Para. 19, the PSR caps Mr. Brown's actual fentanyl possession at... twenty-nine pills, those recovered from his vehicle following a traffic stop. That is roughly **three** grams, by weight... a shadow of even the '40-gram' drug ceiling.

5. At Para. 26, the PSR correctly refutes and rejects the Government's attempt to increase Mr. Brown's exposure with respect to and aggravating role enhancement—correctly finding that the enhancement would necessarily arise from conduct **of acquittal**, rather than from proof endorsed and utilized by the panel. "As Chapter Three adjustments are to be applied based on relevant conduct, and relevant conduct does not include acquitted conduct, a role enhancement is not applicable. USSG Sect.s 1B1.3(a) and (c)." Mr. Brown could not pen a more accurate, nor more compelling, sentence himself, nor can undersigned counsel. The calculation for Mr. Brown is Nineteen, no higher.

We refer this Court's attention, here, to the (typically) erudite and deeply-researched arguments Mr. Engh has raised in the sentencing position paper for Mr. Trevaun Robinson (Doc. 2727), regarding conduct of acquittal, rather than restate the same here. The die is cast, notwithstanding the Government's efforts in its own sentencing paper. They tried a case, they had the floor as long and as often as they sought, and the jury rejected their theories, their accusations, and count three entirely, for Mr. Brown—and count one at a radically diminished and limited level.

This jury spoke, loudly and without error, regarding Gregory Brown. The 'aggravated role,' or leadership position ascribed to Mr. Brown, did not fit him, and the jury tells you to sentence him without regard thereto. There is no nuance, in this reading—it is a fiat. By finding as it has, this jury seeks to limit Mr. Brown's punishment, in greatest part. The jury was not hidden from the full scope of the Government's allegations; they knew a previous trial had occurred, and they heard in both open and closing arguments from the Government's impossibly talented team, just how much they would seek to prove, to what scope of misconduct, over what a great length of years. That the jury resounding rejected this narrative, as applied to Mr. Gregory Brown, cannot be overlooked, or discarded, as the Government now asks.

6. As with the other defendants seen in Mr. Brown's videos, for example, it may exclusively be the case that the jury completely endorsed Mr. Brown's First Amendment defenses for those artistic expressions; doubtless, the Government's effort to paint these works as proof of crime, of a drug conspiracy, or of a wide RICO scheme, failed, and failed utterly.

Mr. Engh and Mr. Peter Wold, in their respective position papers, accurately characterized the Government's submissions as largely 'boilerplate,' specifically pages 2-6, Docket 2709 filed 4/3/2026, and again, both lawyers are correct. We understand the temptation to so offer—one cannot but feel for this Court, and the Government's Counsel, having the same trial so many times, with the same (**endless**) items of evidence, the same troupe of sometimes-malignant witnesses, over more than a year of litigation. However, it is this Court's solemn duty, in every individual case, to fashion a sentence **from the** verdict, and not in spite, or in rejection, thereof.

7. The PSR has calculated Defendant Gregory Brown's criminal history at a score of 15, placing him in Category VI. We objected to the consideration of a pair of older convictions, and the objections are noted for this Court. Should the Court accept the PSR's assertion of Category VI, that will reveal a Guideline range as described above, with the consequent mean/median suggestions in Paras. 97-101.

Mr. Fett, just after filing the PSR in this matter, did bring to the attention of the parties and this Court that upon his arrest in October of 2023, in Houston, Texas, Defendant Brown was completing the supervised release term (often called 'parole') for a Hennepin County/Minnesota case enumerated 27-CR-18-5758. After this Court determined he would be detained during the pendency of this matter, on November 15 of that year, Mr. Brown was moved out of the custody of the Minnesota Department of Corrections, and he was ordered held on this matter, per PSR Para. 71. The DOC has not held a hearing on any allegation of a violation, creating a challenge for the parties and this Court, in determining the proper credit to award to the Defendant. We do hereby assert, and we suspect US Probation will fully agree, Mr. Brown deserves full credit he was indicted, in November of 2023, on **this matter**, exclusively.

Subsequently, the undersigned submitted a proposed order to the sentencing judge in that case, the Honorable Shereen Askalani, seeking clarity, and that Court did order that Mr. Gregory Brown's matter expired on October 28, 2023, and therefore, from that date, to the present and to the date of his sentencing next month, Mr. Brown has been held exclusively on the present federal matter, entitling him to full credit from that date.

When this Court affirms his credit, Defendant Gregory Brown will be entitled to thirty (30) months credit as of April 28th, 2026, and another half a month by the date of his sentencing. For just such a determination, Defendant Brown prays, with a corresponding order that a 'concurrent sentence' on this matter will include full credit for that time actually and already served.

8. As amply evidenced in the PSR, Paras. 72-80, his upbringing was as chaotic and as violent as possible without costing him far more, perhaps his actual existence, and his survival was commendable—though his decisions and criminal conduct upon becoming an adult are far less so. He is a bright and engaging man, and his efforts to assist his counsel prior to and throughout his long trial were exceptional—so much so, it is no wonder the panel chose to reject the Government's accusations, and their effort to paint him with the co-defendants' collective conduct. He has gained painful wisdom from his incarceration, and also from his trial. He has a magnificent life partner who is awaiting his release, to start anew, without a nexus to this pain, to these miserable rough streets that produced him; his daughter and his partner and his dogs will assist him to leave all that long behind him. He has asked his counsel for a position as a law clerk/paralegal-in-training, such was his engagement, his sagacity, and his talent at juror-evaluation... and the prospect of that offer is frankly optimistic.

He will need assistance and to remain motivated to fight the alcoholism that so troubled him in his late teens and the decade of his twenties, but his time behind bars has educated him about the myriad and sundry treatment protocols available to him, while on federal supervised release.

Simply put, your Honor, Gregory Brown failed miserably at extricating himself from the systems that kept him breathing, and gave him friendship, and provided his environment, that being the North Side of Minneapolis, with all its hidden graces, obvious threats, and manifest pain. He made choices that resulted in this reduced conviction, still a serious breach of law, to be sure—but radically limited compared to the Government's accusations, and the claims they continue to assert notwithstanding the remarkable and clear message this jury sent. Please consider a sentence at the bottom of the mean and median for offenders similarly situated in this District; indeed, a sentence at forty-eight (48) months would completely accord not only with manifest justice, and the verdict from this jury, but with the balance of the PSR, the compromised childhood and violent youth to which this Defendant was continually exposed, and the time he has already served in fear of his life, due to the errors of his initial counsel.... For just such a sentence, and for justice, Defendant again prays.

**FORFEITURE MATTERS: $5K IN SAVINGS/SAFE DEPOSIT**

Defendant hereby objects to the submissions of the Government relating to his Safe Deposit box, seized on October 16, 2023 and referenced in Doc. 2713, the Government's Motion for Preliminary Order of Forfeiture. The Government's claim to these funds is tenuous at best, and reliant on rank speculation. There is no evidence that **these** funds were ill-gained, that they were used in some means as "a source of influence over the criminal enterprise," as argued on p. 5 of that Motion. This Defendant has been in continuous federal custody since that October 16th, 2023 date, has suffered mightily while in jail, and has a legitimate source (dog sales) for those resources, and a sore need therefore upon his release, after service if the Court's resultant sentence. IRS Agent Matthew Schommer submitted an affidavit in support of the Government's demand for forfeiture, complete with an utterly self-contradicting statement, regarding Mr. Brown's capacity to earn, and source for funds: Agent Schommer acknowledges Mr. Brown was selling French Bulldog puppies, and unopposed testimony and evidence from the trial confirms that these puppies sold for in excess of $20,000 in many cases—yet Agent Schommer surmises that "the only plausible source of the ($5,000 in US Currency) is Brown's RICO activities." (Doc. 2714, p. 3). **Balderdash**. Those funds were legitimate, they were unrelated to any criminal conduct, and they need to be returned to Mr. Brown, or to his designee (Ms. Nubiah Taylor), immediately post-sentencing.

## SENTENCING DISPARITY

18 U.S.C. § 3553(a)(6) requires the Court to consider this sentence in context with other similar defendants to avoid unwarranted sentencing disparities. As outlined in the PSR, for the immediately preceding five years, similarly situated defendants have received an average sentence of Fifty-Seven (57) months. This reflects a growing awareness that lengthy sentences waste resources, waste human capital, and present diminishing returns in providing for public safety. The recommendation in the instant case of a sentence of forty-eight (48) months is utterly reasonable, would properly punish the Defendant, and would incentivize him to a life of sobriety, of peacefulness, of support to his family, to his community, and to this Court, upon completion of his prison time. Thank you, your Honor.

Respectfully submitted,

Dated: May 4, 2026

**North Star Criminal Defense**

/s/ Daniel S. Adkins________
Daniel S. Adkins (#266085)
1295 Bandana Blvd. N, Suite 335
St. Paul, MN 55108
dan@northstarcriminaldefense.com
Ph.: 651-330-9678

**Attorney for Defendant**